EOD MAY 2 4 2002

FILED-CLERK
U.S. DISTRICT COURT

02 MAY 22 AM 10:57

TX EASTERN-BEAUMONT

BY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| GRAYLIN GANT, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 1:01-CV-428 |
| SABINE PILOTS, SABINE PILOTS ASSOCIATION, SABINE PILOT SERVICE, INC., DENNIS E. NEEF, R.L. ANDERSON, G.E. ARNAUD, WILLIAM J. BARAN, D.S. BORDEN, DAVID GALLEGOS, MICHAEL J. GERDES, MITCHEL L. HORNE, R.M. HEATH, LESLIE H. MAXWELL, JERRY J. MCNEIL, WAYNE H. PARKER, BOBBY O. RATCLIFF, R.E. RESPESS, M.A. SCOTT, PHILLIP C. SMITH, THOMAS B. SMITH, K.I. SELINDIS, D.M. SEVERINSON, M.D. TAYLOR, C.A. TWEEDEL, E.K. WARNER, AND DAVID A. WOOD | § § § § § § § § § § § § § § § § § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS SABINE PILOTS ASSOCIATION, SABINE PILOT SERVICE, INC., DENNIS E. NEEF, R.L. ANDERSON, G.E. ARNAUD, WILLIAM J. BARAN, D.S. BORDEN, DAVID GALLEGOS, MICHAEL J. GERDES, MITCHEL L. HORNE, R.M. HEATH, LESLIE H. MAXWELL, JERRY J. MCNEIL, ESTATE OF WAYNE H. PARKER, DECEASED, BOBBY O. RATCLIFF, R.E. RESPESS, M.A. SCOTT, PHILLIP C. SMITH, THOMAS B. SMITH, K.I. SELINDIS, D.M. SEVERINSON, M.D. TAYLOR, C.A. TWEEDEL, E.K. WARNER, AND DAVID A. WOOD**

This matter is before the court on "Motion For Summary Judgment By Sabine Pilots

Association, Sabine Pilot Service, Inc., Dennis E. Neef, R.L. Anderson, G.E. Arnaud, William J.

Baran, D.S. Borden, David Gallegaos, Michael J. Gerdes, Mitchel L. Horne, R.M. Heath, Leslie

H. Maxwell, Jerry J. McNeil, Estate Of Wayne H. Parker, Deceased, Bobby O. Ratcliff, R.E.

Respess, M.A. Scott, Phillip C. Smith, Thomas B. Smith, K.I. Selindis, D.M. Severinson, M.D.

34

Taylor, C.A. Tweedel, E.K. Warner and David A. Wood" (collectively "Defendants"), filed on February 13, 2002 (Dkt. #18).[1] Plaintiff filed a response on April 25, 2002 (Dkt. #26), and Defendants replied on April 30, 2002 (Dkt. #27). Upon consideration of the parties' written submissions and the applicable law, the court is of the opinion that Defendants' motion should be GRANTED.

## I. BACKGROUND

Plaintiff Graylin Gant ("Plaintiff") brings this action against Defendants, alleging that he was subjected to intentional racial discrimination when he applied for but was not selected to participate in Defendant Sabine Pilots Association's ("Sabine Pilots Association") apprentice training program. In particular, Plaintiff asserts claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981.

Plaintiff is an African-American male. Defendants include the Sabine Pilots Association as a group, as well as each member of the association individually. The Sabine Pilots Association consists of branch pilots who are appointed by the governor to four year terms at each port in Texas. TEX. TRANSP. CODE § 63.041(a)-(b). Around twenty-three branch pilots serve the Sabine River and basin in Texas by providing various services in local navigational waters.[2]

Plaintiff claims that he applied for the Sabine Pilots Association's apprentice training program in August 1999 with intentions of becoming a branch pilot. To become a branch pilot,

---

[1] Despite being treated as separate entities in the caption of this case, Sabine Pilots and Sabine Pilots Association are the same entity. See Defs.' Mot. Summ. J. at 1.

[2] Plaintiff names twenty-three branch pilots as Defendants in this action, but Defendants claim that one Defendant, Wayne H. Parker, is deceased and four others were non-voting members of the Sabine Pilots Association at the time of election. See Defs.' Mot. Summ. J. at 2.

2

an individual must first complete an apprentice training program set up by the commissioners where he or she receives instruction and training under a sponsoring pilot for six months. After that period and up to six more months of training, the individual may then be eligible to become a deputy pilot. If that person becomes a deputy pilot, he or she may be able to "exercise the functions" of a branch pilot after a probationary term of up to one year. See TEX. TRANSP. CODE § 63.044(b).

When Plaintiff applied for the apprentice training program, a committee within the Sabine Pilots Association included his name on the list of qualified applicants. Plaintiff alleges that the Sabine Pilots Association controls "who will become Deputy Pilots with the apprenticeship program, and who will eventually be qualified to become a pilot with Sabine Pilots." Pl.'s First Amend. Compl. at 9. On October 6, 1999, the Sabine Pilots Association selected two white males, Charles LaHaye ("LaHaye") and Dallas Higgins ("Higgins"), to participate in its apprentice training program after a vote by secret ballot; they did not choose Plaintiff. As a result, Plaintiff claims that he was passed over simply because of his race in favor of two lesser-qualified non-African-Americans.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264 (5th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of

probative evidence that there remains an issue of fact to be tried.  Id.  An issue is material only if

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In this analysis, the court reviews

the facts and evidence and draws all inferences in the light most favorable to the nonmovant.

Colson v. Grohman, 174 F.3d 498, 506 (5th Cir. 1999) (citing Anderson, 477 U.S. at 255).  The

party opposing the motion, however, may not rest on mere allegations or denials of pleading, but

must set forth specific facts showing a genuine issue for trial.  Anderson, 477 U.S. at 256.

Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for

summary judgment.  Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

## III.  DISCUSSION

In Plaintiff's first amended complaint, he alleges that all Defendants are liable for

intentional racial discrimination under Title VII and 42 U.S.C. § 1981 because Defendants failed

to select him for the apprentice training program and chose two white males who were less

qualified for the program instead.  Plaintiff essentially argues that Defendants improperly failed

to hire him on the basis of his race.  Defendants argue in their motion for summary judgment that

summary judgment is proper because Plaintiff cannot establish a prima facie case for intentional

discrimination under either of his claims and because Plaintiff has adduced no evidence proving

that he is "clearly better qualified" for the apprenticeship program.  The court will first consider

Defendants' argument concerning Plaintiff's prima facie case.

Both Title VII and 42 U.S.C. § 1981 prohibit discrimination on the basis of race and/or

national origin.  See 42 U.S.C. § 2000e-2; 42 U.S.C. § 1981 (section 1981 forbids discrimination

on the basis of race, ancestry, or ethnic characteristics in the making of contracts).  Claims by

plaintiffs brought pursuant to Title VII and § 1981 should both be analyzed under the "Title VII

4

rubric of analysis" because "[c]laims of intentional discrimination brought under Title VII and 42 U.S.C. § 1981 require the same proof to establish liability." Byers v. Dallas Morning News, Inc., 209 F.3d 419, 422 n.1 (5th Cir. 2000) (citing Wallace v. Texas Tech Univ., 80 F.3d 1042, 1047 (5th Cir. 1996); Anderson v. Douglas & Lomason Co. Inc., 26 F.3d 1277, 1284 n.7 (5th Cir. 1994)). Therefore, the court will employ a Title VII analysis for both of Plaintiff's claims.

In a Title VII or § 1981 case, the plaintiff carries the initial burden of establishing a prima facie case of racial discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803 (1973). Accordingly, to defeat Defendants' motion for summary judgment, Plaintiff must present a prima facie case of racial bias. Put differently, Plaintiff must "make a showing sufficient to establish the putative existence of every element that is essential to [his] case." Davis v. Chevron U.S.A., Inc., 14 F.3d 1082, 1084-85 (5th Cir. 1994) (citation omitted). "Otherwise, 'there can be no genuine issue as to any material fact, [because] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" Id. at 1085 (citation omitted). The Fifth Circuit allows plaintiffs to establish a prima facie case under Title VII by either direct or indirect evidence of discrimination.

A.    DIRECT EVIDENCE OF RACIAL DISCRIMINATION

A plaintiff can make a prima facie case for racial discrimination "[i]f there is direct evidence that an employer placed substantial negative reliance on an illegitimate criterion in reaching an employment decision . . . ." Id. (citations omitted). "Direct evidence of racial discrimination is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption." Johnson v. Fleet Mortgage Corp., 878 F. Supp. 71, 74 (E.D. La. 1995) (citing Brown v. East Miss. Elec. Power Assoc., 989 F.2d 858, 861 (5th Cir. 1993)).

5

Plaintiff argues that he can provide "direct evidence" of discrimination by Defendants. The court disagrees.

Plaintiff claims that the Sabine Pilots attempted, in contravention to Texas law, to exclude the Commission from the selection process for the apprentice training program "after the commissioners became concerned with the fact that minorities were excluded" from the Sabine Pilots Association. Pl.'s Resp. at 4, Ex. 5, 6. While the Commission has valid concerns about the dearth of African-American pilots in the Sabine Pilots Association,[3] Plaintiff presents no *direct* evidence linking this concern with any legal or procedural malfeasance on the part of the Association. At best such evidence is circumstantial, or inferential, which cannot satisfy a case for "direct evidence" of discrimination.

Further, the court finds that the Sabine Pilots Association did not disobey Texas law by excluding the Commission from screening apprenticeship applicants before selection. Although Plaintiff claims that Texas law requires the Commissioners to determine which applicants meet the minimum qualifications for the apprenticeship program, nowhere does Texas law state that commissioners must pre-approve candidates for such a program.[4] In fact, under sections 63.003 and 63.042 of the Texas Transportation Code, the Commission does not select new apprentices; rather, it examines and approves deputy pilots who successfully complete the apprentice training

---

[3] In its more than 100 years of existence, there allegedly has never been an African-American apprentice, deputy, or branch pilot in the Sabine Pilots Association. Id. at 3. Such an omission runs contrary to what has long been the demographic composition of Jefferson County. Currently, 33.7 percent of Jefferson County's population is African-American. See U.S. Census Bureau, Census 2000, http://factfinder.census.gov./bf/_lang=en_vt_name=DEC_200_SF1_U_QTP3_geo_id=05000US48245.html (enumerating demographic data for Jefferson County, Texas, compiled in the 2000 census).

[4] To bolster their position, Plaintiff submits a letter from George Gardner to a Sabine Commissioner wherein Gardner espouses the same arguments now made by Plaintiff, namely that the Sabine Pilots are not following Texas law. Such a reading of Texas law, however, misinterprets the plain language of the statutory provisions in question. See TEX. TRANSP. CODE §§ 63.003, 63.042.

program and are recommended for appointment. In conclusion, Plaintiff's alleged "direct evidence" is inconsequential because the Sabine Pilots Association did not disregard any procedural provision of Texas law in selecting applicants for the apprentice training program. Simply put, Plaintiff's evidence does not prove, without inference, that Defendants' decision not to select him was founded in discriminatory animus.

**B.    INDIRECT EVIDENCE OF RACIAL DISCRIMINATION**

Plaintiff also asserts that he can establish intentional racial discrimination through the inferential proof process established in McDonnell Douglas v. Green, 411 U.S. 792 (1973), and Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248 (1981) (hereinafter "Burdine"). These two cases set forth a three step burden-shifting process by which courts determine whether a plaintiff can prove racial discrimination by means of indirect evidence: (1) the plaintiff must prove a prima facie case of discrimination; (2) if the plaintiff is successful, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision; and (3) if the defendant carries this burden, the plaintiff may attempt to demonstrate that the defendant's articulated explanation is pretextual. Burdine, 450 U.S. at 253 (citing McDonnell Douglas, 411 U.S. at 802). Nonetheless, plaintiff always has the ultimate burden of proving that a violation of Title VII or § 1981 occurred. Davis v. Chevron U.S.A., Inc., 14 F.3d 1082, 1084-85.

**1.    Plaintiff Proves A Prima Facie Case Of Discrimination**

For Plaintiff to establish a prima facie case of racial discrimination in this case, he must present evidence showing the following: (1) he belongs to a protected group; (2) he applied for the apprenticeship program in question; (3) he was *qualified for that position when he applied*; (4) despite his qualifications, he was rejected; and (5) after his rejection, the position was filled with a person who was not a member of a protected group. McDonnell Douglas, 411 U.S. at

7

802; Johnson, 878 F. Supp. at 74 (racial discrimination case) (citing Davis, 14 F.3d at 1087 (applying McDonnell Douglas to gender discrimination case)).[5] In deciding Defendants' motion for summary judgment, the court must first look to the motion to see whether it points out the absence of any genuine issue of material fact. Defendants contend that the court must grant summary judgment because Plaintiff cannot establish a prima facie case for intentional discrimination under either of his claims since he was not qualified for the apprentice training program.

As its primary summary judgment evidence, Defendants offer the affidavit of Dennis E. Neef ("Neef"), a branch pilot in the Sabine Bar, Pass, and Tributaries since 1979 and current Chairman of the Sabine Pilots Association. Defs.' Mot. Summ. J. Ex. 1 ¶¶ 1.00, 2.02. In his affidavit, Neef explains why Plaintiff was not qualified for a position in the apprentice training program when he applied. He explains that after six months of instruction and training in the apprenticeship training program, "an apprentice is required to sit for the Coast Guard examination and obtain a First Class Pilot license for the Sabine Neches Waterways" before completing the remainder of the program. Id. Ex. 1 ¶ 4.02. Defendants also submit an "Order Establishing And Approving The Training Program" signed by the Commissioners in 1987 (hereinafter "1987 Order"), which describes the apprentice training program and sets forth a section on "licensing." Id. Ex. 1A at 5. This section states that "[u]pon satisfactory completion of six months of instruction and training, and at least 200 qualifying ship movements, the apprentice shall be afforded two weeks to sit before the United States Coast Guard for a Pilot

---

[5] McDonnell Douglas Corp. involved a plaintiff who brought a Title VII claim for racial discrimination because the defendant refused to rehire him after he was discharged. 411 U.S. 792, 793.

License on the Sabine-Neches Waterways. Upon obtaining his license, he shall return to complete his apprenticeship." Id. Ex. 1A at 5.

Alternatively, "an apprentice may obtain the appropriate First Class Pilot endorsement to an existing license such as Master or Mate." Id. Ex. 1 ¶ 4.02. Accordingly, after six months of training, Defendants maintain that an apprentice must get either a First Class Pilot license or endorsement. This license or endorsement allegedly authorizes an individual to pilot vessels of "any gross tons" in the Sabine Neches Waterways. Id. Ex. 1 ¶ 4.03.

Neef states that an applicant for the requisite license or endorsement must have had "recent and sufficient experience on vessels of 1,600 gross tons or more." Id. Ex. 1 ¶ 4.04. Under the pertinent federal regulation, "'an applicant is considered to have sufficient experience if the applicant has 18 months . . . experience as a master, mate, quartermaster, wheelsman, able seaman, apprentice pilot, or in an equivalent capacity . . . on vessels of 1,600 gross tons or over.'" Id. Ex. 1 ¶ 4.04 (citing 46 C.F.R. § 10.711(c)). But, in some instances, the Coast Guard has relaxed that requirement for individuals with years of service on harbor tugs in local waters, which is considered "reasonably equivalent" to experience on vessels of over 1,600 gross tons. Id. Ex. 1 ¶ 4.07-09. Basically, Neef and the other Defendants contend that to be *qualified* for the apprenticeship program, an applicant first must be authorized either to sit for the Coast Guard test to obtain a First Class Pilot license or to get the equivalent endorsement six months after the commencement of the apprenticeship.

Neef declares that Plaintiff neither had the requisite service on vessels over 1,600 gross tons nor reasonably equivalent harbor tug service. Id. Ex. 1 ¶¶ 6.05, 6.09. Specifically, Plaintiff's "documented experience was primarily limited to service on smaller vessels" and did not meet the standard for "sufficient experience" under the federal regulations. Id. Ex. 1 ¶ 6.05.

9

In fact, Plaintiff had "no prior service on harbor tugs." Id. Ex. 1 ¶ 6.05. Thus, Neef concludes that Plaintiff did not meet the requirements to take the First Class Pilot licensing test or to receive a First Class Pilot endorsement from the Coast Guard. Id. Ex. 1 ¶ 6.06.

Plaintiff, however, disputes Neef's testimony and Defendants' interpretation of the language in the 1987 Order governing the apprentice training program. Likewise, he asserts that he can easily demonstrate a prima facie case of discrimination. There is no dispute that Plaintiff can meet most of the elements to satisfy a prima facie case; in particular, Plaintiff is a member of a protected group, he applied for the Sabine Pilots Association's apprentice training program, he was rejected, and after his rejection, two people who were not members of a protected group were chosen for the program. At issue is whether Plaintiff was *qualified* for the program. As noted above, Defendants believe that he was not, but much evidence shows otherwise. Plaintiff offers a declaration as evidence wherein he states that, contrary to Neef's affidavit, Neef personally told Plaintiff that he was qualified to become a pilot as long as he had a "Master of 1600 gross tons license and experience on vessels as Mate and/or Captain . . . ." Pl.'s Resp. Ex. 1 at unnumbered 3.[6] Plaintiff also claims that Neef did not mention anything about the need for tug boat experience. Id. Ex.1 at unnumbered 3. Plaintiff's declaration is at odds with Neef's

---

[6] The court finds that Plaintiff's declaration is not competent summary judgment evidence because it is comprised solely of unsworn statements. Rule 56 of the Federal Rules of Civil Procedure allows parties to submit sworn "affidavits" as evidence in support of and opposing summary judgment. FED. R. CIV. PROC. 56(e). It is well accepted, however, that courts may not consider unsworn statements as evidence in determining the propriety of summary judgment since such statements do not comply with the requirements of Rule 56(e). See Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 515 (5th Cir. 2001) (holding in a Title VII racial discrimination case that an unsworn employee statement was not competent summary judgment evidence because it did not meet the requirements of Rule 56(e)) (citing Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1305-07 (5th Cir. 1988)); see also Gordon v. Watson, 622 F.2d 120, 123 (5th Cir. 1980) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970); Piper v. United States, 392 F.2d 462 (5th Cir. 1968); Jones v. Menard, 559 F.2d 1282, 1285 n.5 (5th Cir. 1977)).

own affidavit and seems to contradict the 1987 Order establishing the apprenticeship program; however, Plaintiff presents alternate evidence to support his position.

Plaintiff presents the minutes of an October 1997 Sabine Pilots Association meeting where a motion passed unanimously that established "Qualification[s] for Sabine Pilot Applicants." Id. Ex. 4. These qualifications state that "[a]ll Applicants must have Chief Mate Oceans Unlimited or 1600-ton Master Ocean or Near Coastal License." Id. Ex. 4. Unlike Neef's affidavit, there is no mention of a First Class Pilot license or any tug endorsement. Moreover, the Sabine Pilots Association, which includes Neef, apparently thought that Plaintiff was qualified for the program because it placed his name on the list of qualified applicants from which the two successful candidates were selected. When Plaintiff applied, he had a 1,600-ton Master Near Coastal license; thus, under the standards set forth in October 1997, Plaintiff was qualified for the program. Defs.' Mot. Summ. J. Ex. 1C at unnumbered 4. Neef's deposition testimony further sustains Plaintiff's position that he was qualified. Describing the list of qualified applicants for the apprenticeship program that contains Plaintiff's name, Neef says that "this is a list of the applicants on file that we feel . . . passed the minimum qualifications to become apprentices." Pl.'s Resp. Ex. 2 at 10. He further notes that certain members of the Sabine Pilots Association determined that those whose names made the list were qualified. Id. Ex. 2 at 10-12. Further, of the nineteen pilots who voted on applicants to the apprentice training program, six voted in favor of selecting Plaintiff. Id. Ex. 2 at 41.

Plaintiff's evidence clearly contradicts Neef's affidavit. However, Defendants counter Plaintiff's evidence by arguing that, even if he had been selected for the apprenticeship program, he could not have satisfied its requirements, again urging the requirements promulgated by the 1987 Order as interpreted by Neef. This argument epitomizes the confusion inherent in any

11

attempt to discern the necessary qualifications. On the one hand, the Sabine Pilots Association unanimously agreed on the necessary qualifications in a 1997 meeting: "Chief Mate Oceans Unlimited or 1600-ton Master Ocean or Near Coastal Licence." Pl.'s Resp. Ex. 4.[7] On the other hand, Neef, Chairman of the Sabine Pilots Association, declares that the 1987 Order establishing the apprentice training program requires selectees to secure a First Class Pilot license within six months of beginning the program, and before becoming a deputy pilot, which must be within one year after starting an apprenticeship. All of this results in a quagmire of great magnitude for the applicants, the parties, and the court. It appears to the court from the evidence on file that not even Neef understood with clarity the requisite qualifications for the apprenticeship program at the time of Plaintiff's application. This may have resulted from poor communication between the Sabine Pilots Association and the Commission, which promulgated the 1987 Order. Nevertheless, as presented to the court, the necessary qualifications for the program remain decidedly jumbled. Practically speaking, it is utterly impossible for applicants to know whether they are qualified for the apprenticeship program if the Sabine Pilots Association, which determines who is qualified, has no cogent grasp of who is or is not qualified and what the exact requirements for qualification are. If its program does require eligibility for a First Class Pilot license or endorsement within a certain time-frame, the Sabine Pilots Association should modify its procedures so that all applicants are apprised of this fact prior to application.

Additionally, the court finds Defendants' position on Plaintiff's qualifications dubious at best. That Defendants do not consider Plaintiff "qualified" for the program when they not only

---

[7] Not to mention that Neef allegedly informed Plaintiff before he applied that he must have a "Master of 1600 gross tons license and experience on vessels as Mate and/or Captain . . . ." Id. Ex. 1 at unnumbered 3. Neef's statements to Plaintiff differ slightly from the qualifications promulgated by the Sabine Pilots Association in October 1997.

included Plaintiff's name on a list of qualified applicants, but also six Defendants voted in favor of admitting Plaintiff to the program defies logic. Defendants certainly should understand and be able to articulate the precise qualifications for admittance into the apprentice training program before submitting arguments containing contradictions.

The court concludes that Plaintiff has offered enough credible evidence to preclude summary judgment on this issue. True, the 1987 Order concerning the apprentice training program contains language on licensing, but nowhere does it mandate that apprentices must obtain a First Class Pilot license to continue the program after six months as Defendants urge. The language reads that after six months in the program, "the apprentice shall be *afforded* two weeks to sit before the United States Coast Guard for a Pilot License on the Sabine-Neches Waterways." Defs.' Mot. Summ. J. Ex. 1A at 5 (emphasis added). The 1987 Order does not elaborate on the type of pilot license cited. Nor does it expressly require a license authorizing pilotage of vessels of "any gross tons." See 46 C.F.R. § 10.711. In fact, Neef's affidavit provides the only information stating that a First Class Pilots license for vessels of "any gross tons" is required. The court finds that Neef's attempt to fill the gaps in the 1987 Order is not persuasive. There are obvious contradictions between his affidavit and his statements made to Plaintiff, as well as those given at his deposition. Such contradictions, coupled with the presence of Plaintiff's name on the list of "qualified applicants," and the short list of qualifications adopted by the Sabine Pilots Association in October 1997, undermine his affidavit testimony on this point.

The court also notes that a plaintiff "'need only make a very minimal showing'" to establish a prima facie case for racial discrimination. Nichols v. Loral Vought Systems Corp., 81 F.3d 38, 41 (5th Cir. 1996) (although an ADEA case, the same standards are applicable to

13

Title VII and § 1981 actions) (citing Thornbrough v. Columbus & Greenville R.R. Co., 760 F.2d 633, 639 (5th Cir. 1985)).  Because of the minimal showing necessary, and the fact that Defendants have not shown conclusively that Plaintiff was not qualified for the apprentice training program, the court finds that Plaintiff has offered enough evidence to establish a prima facie case of racial discrimination under the facts alleged.  Also, for the purpose of deciding this motion, the court believes that the qualifications set forth by the Sabine Pilots Association in October 1997 are the fairest, most accurate way to measure what was required for admittance into the apprentice training program at the time Plaintiff applied.  Under these purported qualifications, Plaintiff was qualified to be considered for a spot in the program because he possessed a Master license for vessels of 1,600 gross tons or less.  Even though Plaintiff makes out a prima facie case of racial discrimination, however, he does not automatically defeat Defendants' motion.  Nonetheless, Plaintiff's showing does shift the burden of production to Defendants.

  2.  Defendants Articulate A Legitimate, Nondiscriminatory Reason For Their Decision

To keep their motion alive, Defendants must proffer a legitimate, nondiscriminatory reason for their decision not to select Plaintiff for the program.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-7, 509 (1993) (holding that a defendant's burden during the second step is satisfied by producing evidence which, "*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action"); Eastland v. Tenn. Valley Auth., 704 F.2d 613, 618-19 (11th Cir. 1983) ("Once plaintiff establishes a prima facie case of disparate treatment, the burden shifts to defendant to rebut the inference of discrimination . . . by presenting legitimate non-discriminatory reasons for the disparity.") (citing Burdine, 450 U.S.

14

248).  Importantly, Defendants burden at this stage is production, not persuasion; "it 'can involve no credibility assessment.'"  Eastland, 704 F.2d at 620; Reeves v. Sanderson Plumbing Prod, Inc., 120 S. Ct. 2097, 2106 (2000) (quoting St. Mary's Honor Ctr., 509 U.S. at 509).  "For the burden-of-production determination necessarily *precedes* the credibility-assessment stage."  St. Mary's Honor Ctr., 509 U.S. at 509.  The ultimate burden of persuasion remains with Plaintiff at all times.  Reeves, 120 S. Ct. at 2106.

Defendants declare that they did not select Plaintiff for the program because he was less qualified for the position than LaHaye and Higgins.[8]  Defs.' Mot. Summ. J. Ex. 1 ¶ 6.07.  The selection "'of a better qualified applicant is a legitimate and nondiscriminatory reason for preferring the successful applicant over the rejected employee who claims that the rejection was discriminatory.'"  Price v. Fed. Express Corp., 283 F.3d 715, 721 n.2 (5th Cir. 2002) (quoting Jefferies v. Harris County Cmty. Action Ass'n., 693 F.2d 589, 590 (5th Cir. 1982)).  For evidence, Defendants offer a portion of Neef's affidavit testimony which contrasts Plaintiff's qualifications with those of LaHaye and Higgins.  They also provide copies of each applicant's resume with accompanying material.  The court finds that this evidence is competent to show that Defendants selected LaHaye and Higgins due to their alleged superior qualifications.  See Defs.' Mot. Summ. J., Ex. 1 ¶ 6.07.

Neef states that LaHaye had an Unlimited Master license, which is the highest license issued by the Coast Guard and allows him to captain vessels exceeding 1,600 gross tons.  Id. Ex. 1 ¶ 6.01, Ex. 1D.  In contrast, Defendants argue that Plaintiff only held a Master license for

---

[8] Neef states specifically that "[e]ven if . . . Mr. Gant met the requirements to examine for and receive a First Class Pilot license (or endorsement) . . ., Mr. Gant was not as qualified as Mr. LaHaye or Mr. Higgins."

vessels of 1,600 gross tons or less. Id. at 6, Ex. 1 ¶ 6.05. LaHaye allegedly spent ten years sailing on oceangoing coastwise tankers, the last five of which were as Chief Mate, whereas Plaintiff served approximately two and one-half years as Master or Mate. Id. at 6, Ex. 1 ¶ 6.01. Neef states that LaHaye also logged numerous hours on bridge watches along the Gulf coast, but Plaintiff did not. Id. at 6, Ex. 1 ¶¶ 6.01, 6.05. Most importantly, Neef notes that LaHaye graduated with a dual degree from the U.S. Merchant Marine Academy at Kings Point, New York, which Neef claims may be the finest maritime academy in the world. Id. Ex. 1 ¶ 6.01. Plaintiff's degrees in business and diesel mechanics seemingly have little relevance to a position as apprentice or pilot in the Sabine Neches Waterways. Id. at 6. Thus, Defendants conclude that LaHaye was more qualified than Plaintiff for the apprentice training program.

Like Plaintiff, Higgins held a Master license for certain vessels of 1,600 gross tons or less. Id. Ex. 1 ¶¶ 6.03, 6.05, Ex. 1E, 1F.[9] Unlike Plaintiff, however, Higgins had more than fifteen years of experience as Master and Mate serving on board harbor tugs in the Sabine Neches Waterways. Id. Ex. 1 ¶ 6.03. Plaintiff apparently had only two and one-half years of Master and Mate service, none of which was on harbor tugs. Id. Ex. 1 ¶ 6.05. Higgins also had over fifteen years of experience standing watch on harbor tugs. Id. Ex. 1 ¶ 6.03. Moreover, during his service on harbor tugs, Higgins worked regularly under orders given by the Sabine Pilots Association, which made him and his qualifications familiar to them; Plaintiff had no such experience. Id. Ex. 1 ¶ 6.03. Lastly, Higgins's application was on file for longer than one year before the final vote while Plaintiff submitted his application just one month prior to the vote.

---

[9] Plaintiff's license appears to be for up to 1,600 gross tons domestic and up to 3,000 gross tons Near Coastal Waters.

Id. Ex. 1 ¶ 6.03, 6.05.  Accordingly, Defendants conclude that Higgins was more qualified than Plaintiff for the program.

Plaintiff seeks to refute Neef's testimony as to the relative qualifications of LaHaye, Higgins, and Plaintiff by demonstrating that Neef's testimony is not credible.  But, a determination of Neef's credibility on this issue is improper when evaluating whether Defendants' offered competent evidence to rebut the inference of discrimination.  The court finds Neef's testimony on qualifications competent; he is the Chairman and, therefore, represents the Sabine Pilots Association; he also swears to have personal knowledge of the facts in his affidavit.  Defendants have satisfied their burden of production with regard to this step of analysis because they produced competent evidence which, *"taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for" not selecting Plaintiff.  St. Mary's Honor Ctr., 509 U.S. at 509.  Thus, Defendants effectively rebutted the mandatory inference of discrimination created by Plaintiff's prima facie case.  Id. at 510-11.

### 3.    Plaintiff Fails To Demonstrate That Defendants' Explanation Is Pretextual

Next, to deter summary judgment Plaintiff must demonstrate that Defendants' articulated explanation is a mere pretext for intentional discrimination.  "On summary judgment, in this third step, the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision."  Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002) (citations omitted).  If Plaintiff can prove that Defendants' proffered justification is false, this showing, coupled with the fact that Plaintiff has demonstrated a prima facie case, "may permit the trier of fact to conclude that the employer discriminated against" Plaintiff without additional evidence.  Id. (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000)).

Plaintiff offers two arguments to show that Defendants proffered explanation is pretextual.  First, Plaintiff contends that he presents ample evidence demonstrating a clear intent to discriminate by Defendants.  Second, he argues that he has properly established pretext because both LaHaye and Higgins are lesser qualified than Plaintiff.  The court will consider each argument in turn.

a.     *Plaintiff Provides No Evidence Demonstrating A Clear Intent To Discriminate By Defendants*

Plaintiff asserts that Neef's testimony about the qualifications of each applicant in question demonstrates a clear intent to discriminate because his affidavit is unreliable.  Plaintiff questions the whole of Neef's affidavit because, in it, Neef asserts that Plaintiff was not qualified for selection into the apprentice training program, yet Neef previously told Plaintiff that he was qualified for the position.  Pl.'s Resp. at 13.  Plaintiff also argues that the testimony of Neef, as a Defendant and Chairman of the Sabine Pilots Association, is unreliable since he is an interested witness.  Finally, Plaintiff urges the court to note that Neef's affidavit fails to speak for all of the voting members of the Sabine Pilots Association because he "never spoke to any of the other pilots concerning their votes."  Pl.'s Resp. at 8.  The court, however, does not believe that these arguments present substantial evidence of pretext, or cast doubt on the veracity of Defendants' proffered explanation as to why Plaintiff was not selected for the program.  An examination of each applicant's resume and the supplemental material provided by Defendants bolsters their contention.  The evidence provided by Defendants in support of their argument proves the truth of Neef's affidavit regarding each applicant's qualifications for the position:  LaHaye and Higgins appear to be at least as qualified, if not more qualified, for the program.

18

Defendants were seeking qualified applicants for the apprentice training program who would then become deputy pilots and, later, branch pilots. The requisite qualifications, according to Plaintiff and the notes of Defendants' October 8, 1997, meeting are that "[a]ll Applicants must have Chief Mate Oceans Unlimited or 1600-ton Master Ocean or Near Coastal License." Pl.'s Resp. Ex. 4. Pursuant to their resumes and Neef's testimony, all three of the applicants at issue possessed such minimum qualifications: LaHaye held an Unlimited Master license; Higgins and Plaintiff both held Master licenses for up to 1,600 tons. Hence, Plaintiff's argument that Neef's affidavit cannot be believed *in toto* is undermined by the evidence in the relevant resumes and supplemental material.[10]

Plaintiff's argument is further weakened by the fact that nineteen other applicants beyond LaHaye, Higgins, and Plaintiff met the minimum qualifications and were considered for selection by the Sabine Pilots Association at the same time. Defendants chose LaHaye and Higgins from a list of exactly twenty-two qualified applicants. Because all of the applicants on the list presumably met the program's minimum qualifications, any selection from this list required close perusal of each applicant's specific qualifications, followed by a discretionary decision made by the voting members of the Sabine Pilots Association.

In sum, Plaintiff has not presented evidence from which the court could conclude that Defendants proffered reason–that LaHaye and Higgins were selected based on their superior qualifications–is false. Indeed, the evidence shows that LaHaye was probably more qualified than Plaintiff, and Higgins possessed similar qualifications with minor evaluative differences.

---

[10] Although the court has reservations about Neef's testimony regarding whether or not Plaintiff was qualified for the program, his testimony contrasting each candidate's relative qualifications is sustained by other evidence in the record, including the resumes and applicant information.

Plaintiff also has not adduced evidence demonstrating that Defendants' decision was motivated by intentional discrimination or racial animus. It appears to the court that Defendants simply had many qualified candidates–twenty-two to be exact–and made a discretionary decision based on their assessment of each applicant's individual qualifications. In any case, Plaintiff fails to put forth any evidence proving otherwise.

b.    *Plaintiff Was Not "Clearly Better Qualified" Than LaHaye And Higgins*

To establish that Defendants' justification was a pretext for discrimination, Plaintiff also argues that both LaHaye and Higgins were "less qualified" for the position. See Pl.'s Resp. at 15. The Fifth Circuit has held that "a showing that the unsuccessful employee was *clearly better qualified* is enough to prove that the employer's proffered reasons are pretextual." Price, 283 F.3d at 723 (emphasis added) (citing EEOC v. La. Office of Cmty. Servs., 47 F.3d 1438, 1444 (5th Cir. 1995)); Odom v. Frank, 3 F.3d 839, 845-46 (5th Cir. 1993)). "Showing that two candidates are similarly qualified does not establish pretext under this standard." Id. (citing Odom, 3 F.3d at 846). To establish pretext by showing the losing applicant has superior qualifications, the superiority of his qualifications must be "so apparent as virtually to jump off the page and slap you in the face." Deines v. Tex. Dept. of Prot. & Reg. Servs., 164 F.3d 277, 280-81 (5th Cir. 1999) ("[T]he phrase ['jump off the page and slap you in the face'] should be understood to mean that disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."); Price, 283 F.3d at 723 (citing Odom, 3 F.3d at 847).

As noted above, the qualifications for the apprentice training program are disputed by the parties. Once again, the court will employ the following program qualifications, which are

20

infinitely more favorable to Plaintiff than those posited by Defendants: "[a]ll Applicants must have Chief Mate Oceans Unlimited or 1600-ton Master Ocean or Near Coastal License." Pl.'s Resp. Ex. 4. Under these requirements, all of the three applicants in question, along with nineteen others, were qualified for the program. The court now must determine whether Plaintiff was "clearly better qualified" for the position than LaHaye and Higgins. Based on the evidence in the record, the court is of the opinion that Plaintiff was not.

Plaintiff neglects to argue that he was "clearly better qualified" than the two white candidates; instead, he simply argues that they were "less qualified."[11] Regardless, the court will evaluate Plaintiff's contention in light of the standards relevant to establish pretext in this circuit. First, Plaintiff asserts that Higgins was less qualified because Plaintiff operated "vessels much larger than the tug boats Mr. Higgins operated." Pl.'s Resp. at 15. In truth, however, Higgins held the same license as Plaintiff–Master for vessels up to 1,600 gross tons. Defs.' Mot. Summ. J. Ex. 1E at unnumbered 2. Plaintiff then challenges Higgins's experience because he had his Master license for only one year prior to selection into the apprentice program as opposed to Plaintiff's alleged eighteen years of experience. Pl.'s Resp. at 15. Although the experience appears disparate, Higgins had over fifteen years of experience on harbor tugs, and the Sabine Pilots Association was familiar with his work and experience. Defendants, in good faith, may have been looking for applicants with experience on harbor tugs, and certainly can give special consideration to those candidates with whose work they are familiar. Further, Higgins's

---

[11] This omission may be due to Plaintiff's failure to cite Fifth Circuit authority on the issue of pretext. See Pl.'s Resp. at 17-18. Plaintiff cites rules from four other circuits on what constitutes enough proof to find pretext, but each of those standards is different than the one used by the Fifth Circuit. Id. (citing cases from the First, Second, Fourth, and Eleventh Circuits) Accordingly, Plaintiff's citations are not controlling in this case.

21

application was on file roughly one year longer than Plaintiff's when the Sabine Pilots Associations voted. Defs.' Mot. Summ. J. Ex. 1 ¶ 6.09. Such evidence shows, if anything, that Higgins and Plantiff were similarly qualified for the position. Although Plaintiff's qualifications were sufficient, and even assuming that he was marginally more qualified than Higgins at that time, Plaintiff's qualifications do not "jump off the page" and "cry out to all who would listen that he was vastly–or even clearly–more qualified for the subject job" when contrasted with Higgins's experience. Deines, 164 F.3d at 280-81; Price, 283 F.3d at 723 (citing Odom, 3 F.3d at 847).

Second, Plaintiff maintains that LaHaye was "less qualified" than Plaintiff for the program because LaHaye "had no experience as a Master of Ocean going vessels." Pl.'s Resp. at 17. LaHaye's resume, however, expressly contravenes Plaintiff's position as it shows that he was licensed by the Coast Guard as a "Master, All Oceans, Steam or Motor Vessels of Any Gross Ton." Defs.' Mot. Summ. J. Ex. 1D at unnumbered 1. Plaintiff also suggests that LaHaye's resume is deficient because he did not list any positions he may have held as a master of ocean going vessels, whereas Plaintiff provided his "seatime experiences" in detail. This averment, however, fails to address LaHaye's qualifications altogether, and does not even attempt to demonstrate that Plaintiff was "clearly better qualified" than LaHaye. Upon reviewing LaHaye's resume next to Plaintiff's, it appears that LaHaye was actually more qualified than Plaintiff for the apprentice training program. See id. Ex. 1D, 1F. LaHaye, unlike Plaintiff, possessed the highest license issued by the Coast Guard and graduated from a renown maritime academy. Plaintiff therefore fails to establish pretext by contrasting his qualifications with those of Higgins and LaHaye; he has not adduced any evidence demonstrating that

22

discrimination lay at the heart of Defendants' decision. Hence, the court finds as a matter of law that an inference of discrimination cannot be drawn from the evidence submitted in this case.[12]

## IV.  CONCLUSION

After reviewing the record and giving Plaintiff the benefit of all reasonable inferences, the court concludes that, when viewed in the light most favorable to Plaintiff, the summary judgment evidence supports the finding that there is no genuine issue of material fact regarding whether Plaintiff was the victim of intentional discrimination. Plaintiff fails to establish a prima facie case of racial discrimination through *direct* evidence. He does, however, establish a prima facie case *inferentially*. Nonetheless, Plaintiff fails to prove that Defendants' proffered reason for not selecting him–that LaHaye and Higgins were selected based on their superior qualifications–is pretextual. Because the court finds that a reasonable jury could not reasonably find for Plaintiff, Defendants are entitled to summary judgment as a matter of law. As a result, Defendants' motion for summary judgment is hereby GRANTED. It is so ORDERED.

SIGNED this the __21ˢᵗ__ day of May, 2002.

_Richard A. Schell_
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE

---

[12] Following the Fifth Circuit's decision in Price and the Supreme Court's Decision in Reeves, this court also believes that even assuming that Plaintiff has presented evidence showing that Defendants' explanation is pretextual, "his evidence of pretext does not support an infrerence that intentional discrimination was the real reason for the employment decision." Price, 283 F.3d at 723-24 (citing Reeves, 530 U.S. at 148). Similar to the plaintiff in Price, Plaintiff in this case "has failed to present evidence from which a reasonable fact finder could infer he was intentionally discriminated against." Id. at 725.